ARKANSAS INSURANCE COMMISSIONER *v.*
CHRISTIAN FOUNDATION LIFE INSURANCE
COMPANY

5-5282 455 S. W. 2d 878

Opinion delivered June 29, 1970

*Stephan Safly,* for appellant.

*Allen & Young,* for appellee.

GEORGE ROSE SMITH, Justice. By statute the Insurance Commissioner is required to make periodic examinations of the affairs, transactions, accounts, records and assets of domestic insurance companies. Ark. Stat. Ann. § 66-2115 (Repl. 1966). Pursuant to that statute

the Commissioner conducted an examination of this appellee, Christian Foundation Life, for the period January 1, 1964, through December 31, 1967. A detailed report of the examination was duly filed by the examiners.

In connection with the examination of this insurer and of other insurers being examined at the time, the Commissioner imposed for the first time a requirement that the principal officers of each company execute what the Commissioner refers to as a Standard Certificate, having to do with information not disclosed by the records of the company. The officers of Christian Foundation Life refused to execute the Standard Certificate as prescribed by the Commissioner but offered to execute a similar certificate in a slightly amended form. After a hearing conducted by a departmental examiner the Commissioner refused to accept the proposed amendments and ordered that the original Standard Certificate be completed. On appeal, however, the circuit court set aside the Commissioner's order and allowed Christian Foundation Life to use the amended form. For reversal the Commissioner contends that the circuit court exceeded its authority in modifying the Commissioner's decision.

The facts are not in dispute. It is conceded that Christian Foundation Life, during the examination of its affairs, afforded the Commissioner's representatives complete access to all the company's books and records. At the departmental hearing the Commissioner's chief examiner, Franklin Seford, repeatedly made it clear that the Standard Certificate was designed solely to elicit information known to an insurer's principal officers but not reflected by its records. Here are exerpts from Seford's testimony: "This [the Standard Certificate] is to have the officers of the company commit themselves to definitive answers for any liabilities that are not reflected by the company's books. . . . We want them to make a statement of fact over and above what the records show. . . . This is a disclosure that must be made independent of any of their records or examina-

the officers' standpoint in the event something is in the mill, is pending, has been committed, but has not been reduced to the record-keeping status. . . . [T]he certificate is to supplement what is in the records to determine if there are in existence any liabilities or other contingent—or other liabilities—that are not reflected in the books and records of the company."

In the order that was modified by the circuit court the Commissioner himself expressed precisely the same point of view, saying: "The certificate form in question is required by this Department to be completed as a disclosure in addition to any information disclosed by the books and records of the company being examined, the purpose of which is to have the officers of the company commit themselves to definitive answers for any liabilities that are not reflected by the company's books and records."

The appeal to this court actually brings up a point of minimum disagreement, for the amended certificate approved by the circuit court contains the exact information demanded by the Commissioner. To make that fact clear we are setting forth in composite form the original Standard Certificate and its form as amended. We have italicized the amendments and have enclosed in brackets the only two words in the original that were deleted in the revision:

In connection with examination of our records for the period from January 1, 1964, to December 31, 1967 we certify that to the best of our knowledge: (1) All borrowings have been recorded in the accounts *of the Company*.

(2) No liabilities or contingent liabilities in the form of endorsements or guarantees of the obligations of others existed at December 31, 1967 *except as reflected in the Company's records and* except as noted below.

(3) No liabilities or contingent liabilities in the

form of financial commitments not in the regular course of ordinary business existed at December 31, 1967, *except as reflected in the Company's records and* except as noted below.

(4) No liabilities or contingent liabilities in the form of purchase commitments or repurchase commitments for investments or assets at prices in excess of current market quotations existed at December 31, 1967, *except as reflected in the Company's records and* except as noted below.

(5) None of the Company's assets were pledged or hypothecated as securities for liabilities of this Company or any other company, firm or person *except as reflected in the Company's records and* except as noted below.

(6) *Except as reflected in the records of the Company, and* except as noted below, the Company holds (without claim of offset) valid and [unquestioned] *legal* title to all assets · listed on the books of the Company and the undersigned officers have no [knowledge] *reasonable grounds for believing* that any of the Company's debtors lacked the legal capacity or authority to execute any of the notes or contracts held by the Company.

A reading of subparagraph (2), for example, will make clear the appellee's objections to the original Standard Certificate. That subparagraph would have required the officers signing the certificate to separately list all the designated liabilities and contingent liabilities of the company even though those obligations were fully disclosed by books that were open to the Commissioner's examination. Yet the Commissioner from the outset has disclaimed any intention to obtain by means of the Standard Certificate any facts except those known to the officers but not disclosed by the company's records. Hence the phrase inserted by amendment in subparagraph (2), "except as reflected in the Company's records," is completely in harmony with the Commissioner's own position in the matter.

1188

In its brief the Commissioner argues that the circuit court exceeded its reviewing authority when it undertook a rewriting of the certificate to be executed by Christian Foundation Life. That action, however, falls clearly within the circuit court's authority to "modify" the Commissioner's order. Ark. Stat. Ann. § 66-2127 (6). Moreover, the Commissioner is mistaken if he considers the circuit court's action to be a permanent rewording of the Standard Certificate. All that a court does is to decide the controversy before it upon the proof adduced by the parties to the case. The circuit court's judgment, and our affirmance thereof, settle the present controversy and will presumably serve as a controlling precedent in similar cases that may arise in the future. The courts, however, do not even purport to exercise any rule-making power in a case such as this one. Consequently the Commissioner is still free to make any regulations or to prescribe any certificates that he deems to be desirable, within the limits permitted by law.

Affirmed.